EDWARD P. JASTRAM *vs.* AMELIA B. McAUSLAN *et al.*

JULY 11, 1910.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Ne Exeat. Inquiry in Equity for Damages. Malice. Want of Probable Cause.*

In support of an application for writ of *ne exeat,* all the facts in possession of the petitioner were laid before a court of competent jurisdiction, in the form of affidavits, and, after examination and consideration of the same, the writ was ordered to issue. Later it was determined by the Supreme Court that the affidavits did not conform to the requirements, and that the writ should abate.

Upon application by respondent in said writ for an inquiry in equity as to his damages:—

*Held,* that respondent was not entitled to such inquiry unless he showed that the proceedings were instituted maliciously and without probable cause.

*Held,* further, that, the evidence failing to show a malicious motive, and the sufficiency of the probable cause, as shown by the affidavits presented to the justice who issued the writ, having been passed upon by him judicially, petitioner for the writ was not liable in damages.

*Held,* further, that the issuing of the writ was the judicial act of a court having competent jurisdiction of the subject-matter, and not the act of the one who sought the writ.

*Held,* further, that, no bond having been required by the court, there was no liability for not giving one.

INQUIRY IN EQUITY as to damages. Heard on appeal of defendant George R. McAuslan, and dismissed.

BLODGETT, J. This is an appeal from a decree of the Superior Court, entered March 12, 1910, denying and dismissing the application of the defendant George R. McAuslan for an inquiry in equity to assess damages occasioned by the issuance of a writ of *ne exeat* by a judge of the Superior Court.

On January 9, 1909, the defendant George R. McAuslan, by a decree entered in accordance with an order of this court, was adjudged to be in contempt of court and allowed sixty days in which to purge himself. If, within that time, he did

not purge himself, a writ of attachment was to issue against him upon the application of the complainant.

On February 18, 1909, the complainant filed in the Superior Court a sworn petition for a writ of *ne exeat* against said defendant, with three affidavits in support thereof. The petition recited the said decree of January 9, 1909, and stated that the petitioner had not been paid the money due thereunder. It further stated that under a decree of the Superior Court of April 1, 1908, he was entitled to income as, and when received, but had received no part thereof, and that he was informed that the defendant had ceased to reside in this State, was only here temporarily, and had no goods, chattels or real estate on which execution could be levied.

Upon the same day this petition and these affidavits were presented to a justice of the Superior Court, who, after reading and considering them, ordered a writ to issue marked for $25,000. It did issue so marked, and the defendant was taken into custody, and on failing to give bail was committed to the Providence county jail, on February 20, 1909.

On February 26, 1909, the defendant moved to discharge the writ, and on March 5, the presiding justice handed down a rescript wherein he said that the affidavits on which the writ issued were insufficient and that the writ should be quashed.

From the decree entered in accordance with this rescript, the complainant appealed, stating, among other reasons of appeal, that "said decree contains no provision enjoining or restraining the defendant, George R. McAuslan, from making any claim for damages, or from bringing any action or proceeding on account of the issuance of said writ of *ne exeat,* or of the proceedings thereon." This court sustained so much of the decree as related to the quashing of the writ of *ne exeat,* and enjoined the defendant from proceeding at law. Upon the question whether there should also be an injunction from proceeding in equity, the court said (*Jastram* v. *McAuslan,* 29 R. I. 471, 477):

"A majority of the court are of the opinion that the question whether the respondent is entitled to an inquiry as to the

damages which he may claim to have suffered by reason of the issuance of the writ, may be properly left to the consideration of the same court, sitting in equity, which issued the writ, and that it is clearly not a matter to be determined in an action on the law side of the court. *Darley* v. *Nicholson,* 2 Dr. & W. 86; *Frowd* v. *Lawrence,* 1 Jac. & W. 655; *Fuller* v. *Emeric,* 2 Sandf. 626, 629."

On April 26, 1909, this court ordered that the cause be remanded to the Superior Court with directions to enter a decree in the form thereto annexed, dismissing the appeal. This decree, which was assented to by the parties, contains the following provision:

"That said respondent, George R. McAuslan, be and he hereby is perpetually enjoined from bringing any action at *law* on account of his arrest and imprisonment, because of the issuance of said writ of *ne exeat; Provided, however,* that nothing herein contained shall be construed so as to prevent said George R. McAuslan from applying to this court *sitting in equity,* for an inquiry according to the course of equity in such causes as to what damages, if any, he may have suffered by reason of the issuance of said writ, or to prevent this court sitting in equity from awarding any damages to said respondent it may, on such inquiry, ascertain that he has suffered by reason of the issuance of said writ and his imprisonment thereunder, or compelling the payment of any damages so found and assessed by decree or otherwise; and provided, further, that nothing herein contained shall be construed as an adjudication that said George R. McAuslan is entitled to such inquiry, or as an adjudication that he is entitled to damages thereon, or as an adjudication as to the rule of damages thereon."

On June 4, 1909, George R. McAuslan filed an application, praying that the court "direct an inquiry to assess such damages as your petitioner may have sustained by reason of the wrongful issuance of said writ of *ne exeat.*"

On February 28, 1910, there was a hearing in the Superior Court, at which the defendant produced witnesses and deposi-

tions and the complainant produced the affidavits of Albert Gerald, deceased, William Armour, and the complainant.

After this hearing, the Superior Court handed down the following rescript:

"TANNER, P. J.   This is an application for an inquiry to assess damages in behalf of the respondent by reason of his imprisonment under a writ of *ne exeat* issued in the above entitled cause on the 18th day of February, 1909.   The grounds of said application are set forth in the fourth paragraph as follows:

"'4.   And your petitioner says that said writ of *ne exeat* was issued upon affidavits insufficient to establish the fact that said George R. McAuslan was then about to leave the State for the purpose of avoiding the service of process of this court; and your petitioner further avers that said Edward P. Jastram, complainant in said bill, well knew that the said George R. McAuslan was not about to leave the State for the purpose of avoiding the process of this court; that said writ was maliciously caused to be issued by the said Edward P. Jastram for the purpose of injuring this said petitioner and for the purpose of coercing him by use of said process into payment to him of large sums of money for the purpose of procuring his release.'

"The first question to be determined seems to be upon what principles of law and equity should the inquiry proceed.   An examination of such precedents as are available convinces us that the inquiry must proceed at least upon an analogy furnished by actions at law.   The grounds of the motion, as already quoted, confirm this opinion, since they summarize well-known causes of action.   No bond was given upon the issuance of the writ of *ne exeat* to respond in damages if the writ should be quashed.   Resort, must, therefore, be had to the only known actions at law for the malicious use or abuse of process.

"We think the authorities clearly show that an action for false imprisonment could not lie in this case, because the writ was issued by a court having jurisdiction over the subject matter and upon affidavits passed upon by the court.

"If, however, the writ was procured and used maliciously without proper cause, or the process was abused, the action would lie.

"Upon the question of malicious prosecution, we are not able to say upon the evidence that the writ was maliciously procured. If the complainant had not believed that the respondent intended to leave the State to avoid the performance of the court's decree, there was no object in trying to secure the writ, since the decree already entered would have enforced its performance, if possible, under the process of contempt.

"It was argued by the petitioner that certain facts in regard to his affairs were not presented to the court issuing the writ. Our recollection of the testimony is that such facts were urged in argument rather than presented in testimony. Nor, as argued, can we say that they would probably have deterred the court from issuing the writ.

"The remaining consideration is, was there abuse of process?

"Upon this point it was argued that the counsel for complainant urged the officer having custody of the respondent petitioner on the writ of *ne exeat* to commit him to jail rather than have him kept in the personal custody of the sheriff at his home or at hotels. Whatever may have been the motive of counsel in so urging the officer, it was not advice to use the writ in any illegal manner. It was perfectly proper and perhaps wiser for the officer, after having already kept the respondent in his private custody for two days, and thus allowed him considerable latitude to give bail, to commit his prisoner rather than keep him longer in his private custody. We cannot, therefore, say that such action was an abuse of process.

"It is further urged that it was an abuse of process for counsel for the complainant to ask for all the money the respondent had in the Westminster Bank to apply to the claim of the complainant; also to further stipulate that the respondent should assign his own future income in the fund of which he was trustee for the payment of the claim and resign as trustee. It is clear that the counsel for complainant did not ask for any larger amount of money than was due to his client under the

decree in this cause. If, instead of getting a cash payment, he was to get an assignment of future income, it would not seem unreasonable to ask that the respondent should resign as trustee· so that the payment of such future income should be secured. It is an abuse of process to use it to secure something not due in the cause upon which the process is issued, but it is not an abuse of process to use it to secure something which the parties are willing to substitute for the performance due upon the process. To so hold would deprive defendants of the right to· settle their cases by any other means than strict payment of the money due. The respondent could not give security to perform the decree of the court, and other considerations were suggested. to take its place. If this could not be done hardships might be imposed upon defendants under arrest.

"Furthermore, our reading of the authorities indicates to· us that to constitute abuse of process the abuse must be consummated. The mere purpose or desire to abuse process is. not sufficient. Either improper acts must be done, such as the imposition of unnecessary and illegal hardships, or the ulterior objects desired must be attained. But, as we have seen, no illegal hardship was imposed, and the respondent petitioner did not yield to any suggestion of settlement, but was discharged upon the writ without making terms.

"For these reasons we are of the opinion that the inquiry as. to damages should not be granted. The petition is denied and dismissed."

On April 9, 1910, the applicant filed a claim of appeal from the decree, entered in accordance with said rescript, which. states the following reasons of appeal:

"*First:* Said decree is against the law in this: (a) That it found there was no abuse of process; (b) that it found that the· action of the judge of the Superior Court in issuing the writ protected the complainant by reason thereof; (c) that it denies. the respondent the only relief and redress which he has for the wrongful issuance of the aforesaid writ of *ne exeat;* (d) that it does not assess damages in such sum as was proven and the law gives in such cases. All of which more fully appears by·

the transcript of testimony filed herewith and made a part of these reasons and claim of appeal.

"*Second:* Said decree is against the evidence and the weight thereof in this: (a) That it found that the respondent was not entitled to damages by reason of his imprisonment; (b) that it found in fact that the complainant and his counsel had not abused the process of the Superior Court after the issuance of said writ in trying to extort from this respondent money and other concessions which the complainant was not entitled to; (c) that it found as a fact that there was probable cause for the issuance of said writ of *ne exeat.* All of which more fully appears by the transcript of testimony filed herewith and made a part of these reasons and claim of appeal.

"*Third:* Said decree is erroneous in ordering said application of said George R. McAuslan denied and dismissed.

"*Fourth:* Said decree is erroneous in other respects which this respondent prays he may be allowed to assign at the hearing."

The cause is now before the court upon this appeal.

We are of the opinion that the decree appealed from was correct. The complainant McAuslan, as appears by the opinion of this court in *Jastram* v. *McAuslan,* 29 R. I. 390, rendered on January 4, 1909, had been adjudged and decreed to be in contempt for not paying "the sums of $11,732.80 together with interest at the rate of six per cent. on the sum of $3,302.90, from March 13, 1907, to the date of satisfaction of the decree heretofore entered in this cause on April 1, 1908," the court in that case holding (p. 392): "The amount so required to be paid is specifically declared to be dividends and income from the trust estate which had heretofore been received by the respondents as trustees and to which the complainant is entitled. There is no limitation of language here to a payment out of the trust estate only; nor, indeed, should such a limitation have been in the decree. The respondents are found to have collected, as trustees, income of the trust estate belonging to the complainant, and this, in contemplation of law, they should

pay him on demand; but the duty to pay the complainant dividends and income of the estate which they have collected is in no wise to be prejudiced by the fact that the respondents may have devoted the complainant's property to other purposes. If they have done so, they must reimburse him from their individual estates, and can not be heard to claim that they have none of the trust income now available therefor . . . . The respondents and each of them are adjudged to be in contempt and that they may purge themselves of that contempt by the payment of the amount named in the decree aforesaid, with interest thereon from the date of the decree, within sixty days, together with the costs of this application." The time thus given to McAuslan to pay and to purge himself of contempt by the leniency of the court expired on March 10, 1909. Meanwhile, it is undisputed that McAuslan had gone to Burlington, in the State of Vermont, in which place he was conducting and managing a store. From information which came to the counsel of the plaintiff it clearly appears that such removal was believed to be a permanent removal for the purpose of avoiding the decree aforesaid. Mr. Gerald's affidavit sets forth, "I had not the least doubt after reading the affidavit of Frank A. Tillinghast that Mr. McAuslan had gone to Burlington to live, for the purpose of avoiding performance of the decree, and I believe that Frank A. Tillinghast's affidavit alone was sufficient to make it my duty, if Mr. McAuslan came to Providence, to lay the papers before the court and ask for the writ," and upon later hearing that McAuslan was in Providence he laid all the facts in his possession before the Superior Court in the form of affidavits in support of an application for a writ of *ne exeat.* It is not claimed that information was withheld or that misrepresentations of any kind were made to the court in support of such application, and after examination and consideration of the same by a justice of that court, who unquestionably had full jurisdiction in such cases, the writ was ordered to issue. Later, as appears by the decision of this court in *Jastram* v. *McAuslan*, 29 R. I. 471, 476, it was determined, not that the affidavits were untrue, but that, being upon informa-

tion and belief, and not conforming to the requirement of rule 33 of the equity rules of said court, that the writ should abate. It is evident that in this case McAuslan is not entitled to a inquiry as to damages as against the respondent Jastram unless at least he shows that the proceedings were instituted maliciously and without probable cause. Such is the rule where one has been arrested on a criminal complaint, and we see no reason for enlarging the requirements in this case. Thus in *Gifford* v. *Wiggins*, 50 Minn. 401, the law is thus declared (p. 404):

"It seems to be settled by an almost unbroken line of authorities that if a person merely lays a criminal complaint before a magistrate in a matter over which the magistrate has a general jurisdiction, and the magistrate issues a warrant upon which the person charged is arrested, the party laying the complaint is not liable for an assault and false imprisonment, although the particular case may be one in which the magistrate had no jurisdiction.

"The law on this subject was as well stated as anywhere by Lord Abinger in *West* v. *Smallwood*, 3 Mees. & W. 418, as follows: 'Where a magistrate has a general jurisdiction over the subject-matter, and a party comes before him and prefers a complaint, upon which the magistrate makes a mistake in thinking it a case within his authority, and grants a warrant which is not justifiable in point of law, the party complaining is not liable as a trespasser, but the only remedy against him is by an action upon the case if he has acted maliciously.' See also, *Leigh* v. *Webb*, 3 Esp. 165; *Carratt* v. *Morley*, 1 Q. B. 18; *Murphy* v. *Walters*, 34 Mich. 180; *Von Latham* v. *Libby*, 38 Barb. 339; *Barker* v. *Stetson*, 7 Gray. 53; *Langford* v. *Boston & Albany R. Co.*, 144 Mass. 431 (11 N. E. Rep. 697); *Teal* v. *Fissel*, 28 Fed. Rep. 351."

See also *Bassett et al.* v. *Bratton*, 86 Ill. 152, 157 (1877). In following this decision in *Wilmerton* v. *Sample*, 42 Ill. App. 254, 256 (1891), the court thus explains the reason for the rule: "It cannot be questioned that the justice had jurisdiction to issue the search warrant, upon the making of a proper affidavit therefor. The statute vested in him the authority of law to

act officially in matters of that kind, and when applied to by
appellant to issue a writ to be executed within his territorial
jurisdiction, he had authority as a magistrate to act officially
in the matter then in hand.   If it were a matter in which the
justice had no authority to act at all, he would be without
jurisdiction, and the parties would all be trespassers; but here
he had general jurisdiction over the subject-matter; and the
most that can be said is that he erred in his judgment; that the
affidavit was insufficient, and issued a writ not justifiable in the
law.    In such case the magistrate is the judge of the suffi-
ciency of the affidavit presented to him, and the complaining
witness is not responsible for the correctness of that judgment.
The welfare of the State and the public interest in the prosecu-
tion of offenses against the law forbids that he should be so
responsible.    He is liable only for his own act in setting the
magistrate in motion, if that act be malicious and without prob-
able cause.    That liability can only be enforced in an action on
the case.    Trespass will not lie for an act done under legal
process regularly issued from a court, or by an officer of com-
petent jurisdiction.    If the magistrate did not require a suffi-
cient affidavit from appellant, he could not, on that account,
be liable for a trespass *vi et armis*.  *Outlaw* v. *Davis*, 27 Ill.
467;  *Blalock* v. *Randall*, 76 Ill. 224;  *Bassett et al.* v. *Bratton*,
86 Ill. 152;  *West* v. *Smallwood*, 3 M. & W. 418;  *Cooley on
Torts*, 468."

On the question of malice, the record shows that, while
Jastram was the nominal complainant in the *ne exeat* proceed-
ings, the real party in interest was one William Armour for
whom Jastram was assignee.   There is not the slightest evi-
dence that either the nominal or the real complainant was in any
way acting maliciously toward McAuslan.   Not only does each
one of them specifically so state in his affidavit, but there is
no countervailing testimony on the part of McAuslan.   In
*Goldstein* v. *Foulkes*, 19 R. I. 291, it is determined that "in an
action for malicious prosecution, probable cause does not depend
upon the actual state of the case, in point of fact, but upon the
honest and reasonable belief of the party prosecuting;" and in
*King* v. *Colvin*, 11 R. I. 582, 585, this court also held:  "Since

the law presumes that every prosecution is undertaken from proper motives and for sufficient reasons, the plaintiff in an action of malicious prosecution must prove both malice and a want of probable cause. It is not enough for him to prove that the prosecution was malicious, unless he shows it to have been without probable cause; and though malice may be inferred from the want of probable cause, the converse of that proposition is not true." And in *Newton* v. *Weaver*, 13 R. I. 616, 618, it was determined that if a plaintiff "consulted counsel, a lawyer in good standing, for the purpose of ascertaining his legal rights, and submitted to his counsel a full and correct statement of the facts within his knowledge, and was advised by his counsel that he had a good cause of action in trover, and proceeded in good faith upon that advice in bringing the suit, he was justified in so doing and was not liable," in an action for malicious prosecution.

A careful examination of the testimony fails to show any malicious motive on the part of counsel for the application of the writ. The sufficiency of that probable cause, as shown by the affidavits presented to the justice who issued the writ, was passed upon by him judicially and received his judicial sanction, and thus must exonerate the respondent Jastram. It is true that the writ was later, and by this tribunal, held to have been improperly issued, but the issuing of the writ was the judicial act of a court having competent jurisdiction of the subject-matter, and was not the act of the one who sought the writ and who had submitted all his evidence therefor at the time, but who had no power to issue or to withhold the issuance thereof. No bond having been required by the court, it is obvious that there is no liability for not giving one.

The appeal is dismissed, the decree of the Superior Court appealed from is affirmed, and the cause is remanded to the Superior Court for further proceedings.

*Edwards & Angell,* for complainant.

*Eugene A. Kingman, Robert B. Dresser,* of counsel.

*Edward D. Bassett, Irving Champlin, James Harris,* for respondent *George R. McAuslan.*

*R. W. Richmond,* of counsel.